Opinion issued August 27, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00535-CV

———————————

## GREGORY R. MATTOX AND BARBARA WILKERSON, Appellants

## V.

## GRIMES COUNTY COMMISSIONERS' COURT, Appellee

On Appeal from the 506th District Court
Grimes County, Texas
Trial Court Case No. 32,015

## MEMORANDUM OPINION

Appellants, Gregory R. Mattox and Barbara Wilkerson, challenge the trial court's rendition of summary judgment in favor of appellee, Grimes County Commissioners' Court (the "County"), in the County's suit against Mattox and Wilkerson for nuisance. In two issues, Mattox and Wilkerson contend that the trial

court erred in denying them summary judgment and granting the County summary judgment.

We affirm.

## Background

In its third amended petition, the County alleged that Mattox and Wilkerson own lots 35 and 36 (the "lots") in the southwest corner of Hill Forest Manor Subdivision (the "subdivision"). A road, known as Hill Forest Lane, runs along the southern border of the subdivision and the lots.

In 2006, Mattox , Wilkerson, and B.J. Aldredge, a neighbor who owns a lot at the eastern end of Hill Forest Lane, filed applications with the County for it to vacate[1] the eastern and western ends of Hill Forest Lane, asserting that the County had abandoned these portions of the road. The County, concluding that it had abandoned the easternmost 119 feet of Hill Forest Lane, granted Aldredge's application and vacated the eastern end. However, the County denied Mattox and Wilkerson's applications to vacate the westernmost 134 feet. It is this 134-foot strip of land, which abuts the southern boundary of the lots, that is at issue in this case.

In March 2007, Clifford and Eleanor Jackson, who own the acreage which is west of and abuts lot 36 and the subdivision, sued Mattox and Wilkerson to

---

[1] *See* TEX. TRANSP. CODE ANN. § 251.051 (Vernon 2013) (authorizing county commissioners' court to close, abandon, or vacate public roads).

determine the Jacksons' access to Hill Forest Lane.[2] The Jacksons asserted that the western end of Hill Forest Lane did not terminate along the southern border of the lots; rather, it extended across both of the lots to the eastern boundary of the Jacksons' property.

In April 2007, Mattox and Wilkerson filed an application asking the County to "cancel"[3] the west end of Hill Forest Lane. After the County denied the application, Mattox and Wilkerson filed suit against the County in the district court, seeking to compel the County to grant their application. After the district court granted summary judgment in favor of the County, the Fourteenth Court of Appeals reversed and remanded, concluding that summary judgment was precluded by fact issues regarding whether there was any pending or existing development on the Jacksons' property and whether Hill Forest Lane was a proposed interconnection of infrastructure.[4]

In 2010, Mattox and Wilkerson "erected/constructed an obstruction of the causeway of the [r]oad," a fence, which closed off the westernmost 134 feet of Hill Forest Lane. The Jacksons obtained injunctive relief, requiring the removal of the fence, and Mattox and Wilkerson appealed. After this Court reversed the

---

2   *Jackson v. Mattox*, No. 30,753 (506th Dist. Ct., Grimes Cnty., Tex., filed Mar. 6, 2007).

3   *See* TEX. LOC. GOV'T CODE ANN. § 232.008 (Vernon Supp. 2014).

4   *See Mattox v. Grimes Cnty. Comm'rs' Court*, 305 S.W.3d 375, 387 (Tex. App.— Houston [14th Dist.] 2010, pet. denied).

injunction and remanded the case to the trial court, the Jacksons non-suited their claims against Mattox and Wilkerson.[5]

The County further alleged that Mattox and Wilkerson reconstructed their fence, which is a "public nuisance per se" because it constitutes an "unreasonable" interference with the public's use of the Hill Forest Lane and prevents the County from maintaining the road. The County sought a declaration that

> the entirety of Hill Forest Lane, as shown on the map of Hill Forest Manor Subdivision recorded . . . [in the] deed [r]ecords of Grimes County, Texas, except the easternmost 119 feet thereof which on August 14, 2006 was found by the Commissioners' Court to have been abandoned and was therefore vacated, *is a public road subject to use by the public and maintenance by [the County]*.

(Emphasis added.) It also sought a declaration that it "has the right to remove any and all obstructions of the [road]," and an injunction, enjoining Mattox and Wilkerson from further obstructing the road. The County sought both actual damages and exemplary damages, alleging that Mattox and Wilkerson had acted with "malice or gross negligence" in constructing the fence. Mattox and Wilkerson answered, generally denying the allegations and asserting various affirmative defenses.

---

[5] *See Mattox v. Jackson*, 336 S.W.3d 759, 760–64 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (concluding Jacksons did not file verified application for temporary injunction or present evidence of probable right to relief and probable, imminent, and irreparable injury in interim).

4

The County then moved for summary judgment on its nuisance claim, arguing that it was entitled to judgment as a "matter of law" because the evidence conclusively establishes that Hill Forest Lane is a "public road" and Mattox and Wilkerson had obstructed it. It asserted that the subdivision developer, Bond Blackman, had "expressly dedicated" Hill Forest Lane to the public via the plat of the Hill Forest Manor Subdivision," filed on May 9, 1966 and "accepted by the [County]." Also, Blackman had impliedly dedicated Hill Forest Lane to the public by selling lots with reference to the plat. And, in 2007, the County "conclusively" established a public interest in Hill Forest Lane by adopting a County road map (the "map").[6] Moreover, Mattox and Wilkerson, after receiving notice that Hill Forest Lane was to be included on the map, did not contest its inclusion. And their construction of the fence across Hill Forest Lane constitutes a "purpresture," an "encroachment on public rights or the appropriation to private use of that which belongs to the public," and is, thus, a "common law public nuisance per se."

The County further asserted that although Mattox and Wilkerson "contest[ed] the public nature of" the westernmost 134 feet of the Hill Forest Lane and alleged that "such portion ha[d] not been maintained by the County or used by the public," the County's "use and improvement of only a part of [a] dedicated property does not constitute an abandonment of the balance of the property."

---

[6]   *See* TEX. TRANSP. CODE ANN. ch. 258 (Vernon 2013).

Further, a public road does not depend upon its length or upon the places to which it leads, nor upon the number of persons who actually travel upon it. The County also emphasized that Mattox and Wilkerson had never been assessed taxes on the portion of the lots set aside as a dedicated roadway.

The County also moved for a summary judgment on Mattox and Wilkerson's affirmative defenses, asserting that there is no evidence that Mattox and Wilkerson are "good faith purchasers for value and, therefore, not subject to any easements or dedications"; the County violated the recording statutes; or the County fraudulently "changed the length of Hill Forest Lane on the [map] after the time period for filing a jury of view had passed."[7]

To its motion, the County attached, as its summary-judgment evidence, the subdivision plat, dated May 9, 1966; a Warranty Deed, dated May 20, 1966; an abstract of lots 35 and 36; the statutory protest form,[8] scale legend, map, and Resolution; Mattox and Wilkerson's discovery responses; various correspondence and photographs; the minutes of the commissioners' court meetings of July 5, 2006, August 14, 2006, June 11, 2007, September 13, 2010, and February 19, 2014; and the affidavits of Clifford and Eleanor Jackson, former county road commissioner Frank Glass, and Hill Forest Manor Subdivision property owner Lee Roy Peterson.

---

[7]     *See* TEX. TRANSP. CODE ANN. § 258.002(b) (Vernon 2013).

[8]     *See id.*

In their response to the County's matter-of-law summary-judgment motion, Mattox and Wilkerson argued that because a fact issue exists as to whether the 134-foot strip at issue constitutes a "public road," summary judgment was precluded. They explained that in 2005, they purchased the lots from John Besaw, who, in 1991, had built across the 134-foot strip a white-board fence, planting two pear trees behind it to keep people from turning around on his land. In fact, Clifford Jackson, in 1998, had asked Besaw to open part of the fence so that he could temporarily move a travel trailer onto his land while he built his home. Mattox and Wilkerson noted that the Jacksons' property is not a part of the subdivision and they had other county-road access to their property.

When Mattox and Wilkerson purchased their lots, Besaw's white board fence ran along and across Hill Forest Lane. It had two entrances to the lots on the north side, both parallel to the road, and one entrance "at the west dead-end of the road," extending across the 134-foot strip. The branches of the two pear trees spread out over the opening in the fence, across the 134-foot strip. There was "junk all over the property," including a "mobile home that needed to be torn down." After they had purchased their lots, Mattox and Wilkerson had to haul six trailer-loads of "junk" from them, including a load from the area west of and directly behind the pear trees and fence across the 134-foot strip. The grass and vines in the area of the fence and pear trees were so thick that machetes had to be

used to cut back the underbrush to reach the "junk," which included "tires, rims, metal pipe, old carpet, concrete, old suitcases, metal fence, old machinery, big limbs, tractor parts and tires, glass, [and] batteries."

Mattox and Wilkerson, in their response, did not dispute that "the roads in Hill Forest Manor subdivision were dedicated on the plat" or that a road "was conclusively established" by the County's statutory adoption of the map.[9] Rather, they asserted that the plat does not expressly state the length of Hill Forest Lane, the pertinent statute required the County to provide its length,[10] and the County's own records show that Hill Forest Lane is only 1298.025 feet in length. They further asserted that, when actually measured, 1298.025 feet is the distance from the easternmost end, at Aldredge's gate (taking into account the 119 feet the County vacated in 2006), to the their white board fence and pear trees. Thus, the public interest in Hill Forest Lane, as conclusively established by the map, terminated at the white board fence. And there remains a fact issue regarding whether the 134-foot strip of land from the peach trees westward to the eastern boundary of the Jacksons' property constitutes part of Hill Forest Lane.

Mattox and Wilkerson further asserted that "at no time was Hill Forest Lane or any roadway built or maintained, either privately or publicly, all the way to the western boundary line of [lot 36 and the subdivision]." And they noted that the

---

[9] *See* TEX. TRANSP. CODE ANN. § 258.003 (Vernon 2013).

[10] *See* TEX. TRANSP. CODE ANN. § 258.002(d).

8

County had previously concluded that it had not maintained the eastern end of Hill Forest Lane for 35 years and it had abandoned the eastern end. They asserted that the County had similarly never maintained the western end.

Mattox and Wilkerson attached to their response, as their summary-judgment evidence, the subdivision plat and original Warranty Deed; an abstract of lots 35 and 36; the statutory protest form, scale legend, map, and resolution; minutes of the commissioners' court meetings of July 5, 2006, August 14, 2006, June 7, 2007, September 13, 2010, and February 19, 2014; their responses to the County's interrogatories; a map obtained from the County's "9-1-1 coordinator's office"; a letter from Sam Nobles at the Grimes County Road and Bridge Department; and the affidavits of Mattox, Besaw, and County Commissioner Bill Pendley.

Mattox and Wilkerson also moved for summary judgment on their affirmative defenses, asserting that they, as a matter of law, were "good faith purchasers for value and, therefore, not subject to any easements or dedications," and the County had violated the recording statutes and changed the length of Hill Forest Lane. They further asserted that they had no actual or constructive notice of a road over the lots and, while inspecting the lots before purchase, Mattox had gone to the county clerk's office and viewed the subdivision plat, which showed only two unnamed roads, both sixty feet wide, without any length measurements.

Upon actually driving into the subdivision, Mattox and Wilkerson noted that both the eastern and western ends of Hill Forest Lane "stop[ped] way short of the [s]ubdivision's east or west boundary line." And "[t]here was nothing visible to them [that] would have excited their suspicions regarding the existence of any easement, road or road dedication behind the white board fence and two pear trees" that extended across the 134-foot strip. Moreover, Besaw had told Mattox and Wilkerson that he "owned all of the land" and "had put up the fence and planted the two pear trees in 1991 to stop people from driving on his land." To their motion, Mattox and Wilkerson attached various deeds, photographs, satellite images, and correspondence; a road-length diagram; the minutes of the June 7, 2007 commissioners' court meeting; and the affidavits of Mattox and Besaw.

In its response to Mattox and Wilkerson's summary-judgment motion, the County asserted that there is "no evidence" to support their affirmative defenses. It argued that Mattox and Wilkerson could not have been good faith purchasers for value because they "ha[d] admitted they had actual notice of the existence of the [Hill Forest Lane], as shown on the plat of [the subdivision], prior to their acquisition of" the lots. Further, they had constructive notice of the existence of Hill Forest Lane because it is pictured on the recorded plat of the subdivision and the deeds in Mattox and Wilkerson's chain of title reference the plat. Although the recorded plat does not state the overall length of Hill Forest Lane, the

10

measurements of the lots abutting it are listed on the plat. Further, there is "no evidence" that it had violated the recording statutes. The County also argued that Mattox and Wilkerson were "estopped from denying the validity of the plat because they ha[d] admitted its validity in prior lawsuits."

In their reply, Mattox and Wilkerson asserted that although they, "[o]ver the years," had "advanced several theories for why they should be able to erase any claim that [the County] may have in its own capacity or as the steward of a public interest in the disputed dirt," they had "never deliberately, clearly and unequivocally," as is required to support a judicial admission, "stated or intimated that they believed in, or acknowledged the validity of, the original June 1966 plat."

The trial court granted the County summary judgment and declared that Hill Forest Lane, as shown on the plat, except for the easternmost 119 feet that the County had previously vacated, is a "public road" and Mattox and Wilkerson, by "obstructing" Hill Forest Lane, had created a nuisance. The trial court permanently enjoined Mattox and Wilkerson from obstructing the public's use and the County's maintenance of Hill Forest Lane, and it granted the County the right to remove "any and all obstructions." It also awarded the County its costs. The trial court further denied Mattox and Wilkerson's summary-judgment motion on their affirmative defenses.

## Standard of Review

Declaratory judgments rendered by summary judgment are reviewed under the same standards that govern summary judgments generally. *Bowers v. Taylor*, 263 S.W.3d 260, 264 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Provident Life & Accident Ins*., 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc*., 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). And when, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex*., 136 S.W.3d 643, 648 (Tex. 2004).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request for summary judgment as a matter of law. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). When a party has sought summary judgment on both grounds and the trial court's order does not specify its reasons for granting summary judgment, we first review the propriety of the summary judgment under the no-evidence standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(i). If we conclude that the trial court did not err in granting summary judgment under the no-evidence standard, we need not reach the issue of whether the trial court erred in granting summary judgment as a matter of law. *See Ford Motor Co.*, 135 S.W.3d at 600.

To prevail on a no-evidence summary-judgment motion, the movant must establish that there is no evidence to support an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524.

13

In a matter-of-law summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A plaintiff moving for summary judgment on its claim must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Kothari v. Oyervidez*, 373 S.W.3d 801, 806 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A defendant moving for summary judgment as a matter of law must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

### Summary Judgment

In their first issue, Mattox and Wilkerson argue that the trial court erred in granting the County summary judgment on its nuisance claim because it did not establish as a matter of law that Mattox and Wilkerson obstructed a "public road."

"[A] nuisance [is] a condition substantially interfering with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Maranatha Temple, Inc. v. Enter. Prod., Co.*, 893 S.W.2d 92, 98–99 (Tex. App.—Houston [1st Dist.] 1994,

14

writ denied).  To prevail on a cause of action for nuisance per se, a plaintiff must establish that the defendant's activity (1) can be considered a nuisance at all times, under any circumstances, and in any location, or (2) violates a state statute or municipal ordinance declaring the activity to be a nuisance per se.  *Id.* at 100.

"A road that has been laid out and established according to law and that has not been discontinued is a public road."  TEX. TRANSP. CODE ANN. § 251.002 (Vernon 2013).  Under common law, a county may acquire a public interest in a private road through the owner's express or implied[11] dedication of the road for public use.  *McCulloch v. Brewster Cnty.*, 391 S.W.3d 612, 616 (Tex. App.—El Paso 2012, no pet.); *see also State v. NICO-WF1, L.L.C.*, 384 S.W.3d 818, 821 (Tex. 2012) ("A street dedication is setting land apart for public use as a passageway.").  Generally, an express dedication is made by a written instrument or deed.  *Chaney v. Camacho*, No. 04-12-00358-CV, 2013 WL 6533123, at *2 (Tex. App.—San Antonio Dec. 11, 2013, pet. denied) (mem. op.).  "The preparation and recordation of a map or plat showing streets or roadways does not,

---

[11]  In 1981, the Texas Legislature abolished the common-law doctrine of implied dedication in counties with a population of less than 50,000, such as Grimes County. *See* TEX. TRANSP. CODE ANN. §§ 281.002(3), 281.003 (Vernon 2013); *Hayes v. Anderson Cnty.*, 315 S.W.3d 170, 172–73 (Tex. App.—Tyler 2010, pet. denied).  Section 281.003 does not, however, affect roads impliedly dedicated to public use before the August 31, 1981 effective date of the statute. *See* Act of June 1, 1981, 67th Leg., R.S., ch. 613, 1981 Tex. Gen. Laws 2412–13, amended by Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1195–96; *Scown v. Neie*, 225 S.W.3d 303, 309–10 (Tex. App.—El Paso 2006, pet. denied).

15

standing alone, constitute a dedication as a matter of law." *Gutierrez v. Cnty. of Zapata*, 951 S.W.2d 831, 839 (Tex. App.—San Antonio 1997, no writ). Rather, a dedication must be established by a "declaration or act which evinces a clear and unequivocal intention on the part of the owner to presently set aside and appropriate a certain part of his land for use by the public." *Aransas Cnty. v. Reif*, 532 S.W.2d 131, 134 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.). An implied dedication is made when acts and conduct of a landowner induce a belief that he intended to dedicate a road to public use and there is an offer and acceptance of the dedication. *Chaney*, 2013 WL 6533123, at *4 ("What the landowner actually intended is not an element of implied dedication."); *see also Baker v. Peace*, 172 S.W.3d 82, 88 (Tex. App.—El Paso 2005, pet. denied). Any structure placed in a dedicated street of a permanent nature, like a fence, that interferes with the public's present or future use of a dedicated street is an obstruction and constitutes a nuisance per se. *NICO-WF1, L.L.C.*, 384 S.W.3d at 824; *see also* TEX. TRANSP. CODE ANN. § 251.008(1) (Vernon 2013) (providing public roads must be clear of all obstructions).

Here, the County, in its summary-judgment motion, argued that Mattox and Wilkerson created a nuisance because they obstructed the westernmost 134 feet of Hill Forest Lane, which is a public road, by constructing a fence across the roadway. The County's summary-judgment evidence establishes that the plat of

16

the subdivision shows that there is a road along the southern boundary of the subdivision and lots 35 and 36, extending to the western boundary of the subdivision and lot 36. Although the plat does not expressly state the overall length of Hill Forest Lane, it does state the length of the frontage of each of the lots abutting Hill Forest Lane. The plat also includes an express dedication, as follows:

> Bond Blackman Owner of the property shown subdivided in this plat, do[es] hereby make subdivision of same, according to the lines shown hereon and designate same as "Hill Forest Manor," and do[es] hereby, dedicate to public use as such the roads shown hereon and do hereby waive any claims for damages occasioned by the establishment of grades as approved for the roads dedicated . . . .

The County notes that although the plat is dated May 9, 1966 and the deed conveying the subdivision property to Blackman is dated May 20, 1966, the grantor, H.R. Turner, also signed the plat and Blackman adopted the plat by selling lots with reference to it. Thus, Blackman was estopped as the holder of an after-acquired title to deny the prior dedication. *See Hous. First Am. Sav. v. Musick*, 650 S.W.2d 764, 770 (Tex. 1983).

The County asserts that it demonstrated acceptance of the dedication of Hill Forest Lane by exempting the abutting lot owners from taxes on the land comprising the roadway. Regarding Mattox and Wilkerson, the plat indicates that each of their lots consists of 5.9077 acres, and Mattox and Wilkerson have been assessed taxes on at total of 11.82 acres, which does not include the dedicated roadway abutting the lots.

17

The County's evidence also shows that in March 2007, it initiated formal procedures, pursuant to chapter 258 of the Texas Transportation Code, to "conclusively" establish Hill Forest Lane as a public road. *See* TEX. TRANSP. CODE ANN. §§ 258.001–.007 (Vernon 2013). The Texas Legislature adopted chapter 258 to provide an expedited procedure to allow a county to preserve the existence of a public interest in a road in which it might not otherwise be able to prove that such interest had been established due to a lack of witnesses with firsthand knowledge of the road's genesis. *Bastrop Cnty. v. Samples*, 286 S.W.3d 102, 108 n.5 (Tex. App.—Austin 2009, no pet.) (dicussing House Transp. Comm., Bill Analysis, Tex. H.B. 1117, 78th Leg., R.S. (2003)). Chapter 258 does not create a new basis for a county to establish a claim to a roadway; rather, it "merely establishes a procedure whereby [a] county can clarify a public interest already in existence prior to September 1, 1981." *Wallace v. Kent Cnty.*, No. 07-11-00427-CV, 2013 WL 4531253, at *3 (Tex. App.—Amarillo Aug. 21, 2013, no pet.) (mem. op.). And chapter 258 only applies to a county that initiated or completed compliance with its provisions before September 1, 2011. *See* TEX. TRANSP. CODE ANN. § 258.007.

Pursuant to chapter 258, a county is permitted to adopt a "county road map that includes each road in which the county claims the existence of a public interest: (1) under Chapter 281 or other law; or (2) as a result of having continuously maintained the road with public funds before September 1, 1981." *Id.*

18

§ 258.002(a). A person may appear before the county commissioners' court or file a written protest in a county court regarding the county's claim of a public interest in a road. *Id*. § 258.002(b). If a protest is filed, the commissioners' court must appoint a "jury of view" consisting of "five property owners who have no interest in the outcome of the protest" to determine the validity of the county's claim. *Id*. Except as provided by section 258.004, a county road map adopted under section 258.002 constitutes "conclusive evidence" of: (1) the public's right of access over a road included on the map and (2) the county's authority to spend public money to maintain a road included on the map. *Id.* § 258.003. Section 258.004 allows a person to "contest the inclusion of the road in the county road map by filing a suit in a district court in the county in which the road is located not later than the second anniversary of the date on which the county road map including the road was adopted." *Id*. § 258.004(a). A party need not first file a protest with the commissioners' court or county court before filing a lawsuit in a district court. *Samples*, 286 S.W.3d at 109.

It is undisputed that Mattox and Wilkerson did not protest or contest the inclusion of any part of Hill Forest Lane, including the 134-foot strip of land at issue, on the County's road map. *See* TEX. TRANSP. CODE ANN. §§ 258.002(b), 258.004(a). Thus, the County's road map constitutes "conclusive evidence" of the public's right of access over Forest Hill Lane and the County's authority to spend

public money to maintain it. *See id.* § 258.003; *Coryell Cnty. v. Harrell*, 379 S.W.3d 345, 348–49 (Tex. App.—Waco 2011, no pet.) ("Once a Chapter 258 map is adopted, the map is conclusive evidence of the public's right of access over a road included on the map and the county's authority to spend public money to maintain such a road.").

Further, the County's evidence includes photographs of the fence that Mattox and Wilkerson, undisputedly, erected across the area at issue. Thus, the County established as a matter of law that Mattox and Wilkerson placed a fence across a dedicated public road, which constituted an obstruction and a nuisance per se. *See NICO-WF1, L.L.C.*, 384 S.W.3d at 824; *see also* TEX. TRANSP. CODE ANN. § 251.008(1) (providing public roads must be clear of all obstructions).

Mattox and Wilkerson assert that their summary-judgment evidence establishes that there are fact issues as to whether the 134-foot strip of land between their white board fence and the Jacksons' eastern property line is actually a portion of Hill Forest Lane, a "public road." However, they did not dispute in the trial court that "the roads in Hill Forest Manor Subdivision were dedicated on the plat" or the public interest in Hill Forest Lane was "conclusively" established by the County's statutory adoption of the County road map. *See* TEX. TRANSP. CODE ANN. § 258.003. Rather, they asserted that section 258.002(d) required the County to provide the length of Hill Forest Lane and the County's own records show that it

20

is only 1298.025 feet in length. They argue that because the distance between Aldredge's front gate and Mattox and Wilkerson's white board fence and pear trees is 1298.025 feet, when actually measured on the ground, Hill Forest Lane necessarily terminates at their white board fence and pear trees, and not 134 feet later, at the western border of lot 36 and the subdivision. Mattox and Wilkerson assert, thus, that there remains a fact issue as to whether the 134-foot strip of land constitutes part of Hill Forest Lane. And they further assert that there is a fact issue as to whether the County has ever maintained the 134-foot strip at issue as a roadway.

"A public road does not depend upon its length. . . ." *Baker v. Peace*, 172 S.W.3d 82, 90 (Tex. App.—El Paso 2005, pet. denied). Section 258.002(c) requires a commissioners' court to give notice of its intent to assert a public interest in a road by "publish[ing] at least once a week in a newspaper of general circulation in the county . . . a notice: (1) advising the public that the commissioners' court has proposed a county road map including each road in which the county claims the existence of a public interest; (2) identifying a location at the courthouse at which the proposed map will be available to the public during regular business hours; and (3) stating the date and location of the public meeting." TEX. TRANSP. CODE ANN. § 258.002(c). The commissioners are then required to "display the proposed map at the location and during the time

21

described in the notice from the date on which notice is first published through the date on which the commissioners' court formally adopts the proposed map." *Id.* § 258.002(d). "The map must be legible, and the map scale must be that not less than one inch equals 2,000 feet." *Id*.

Thus, section 258.002(d) requires that a "legible map," i.e., one with a scale of "not less than" one inch equals 2,000, feet be displayed. *See id.* Nothing in section 258.002(d) required the County to attest to a precise road length, separately from reference to the plat. And nothing in the summary-judgment evidence that Mattox and Wilkerson direct us to—the statutory protest form, scale legend, minutes of the commissioners' court meetings, map, or resolution—states that the County sought to assert a public interest in Hill Forest Lane as a road of only 1298.025 feet in length.

Mattox and Wilkerson assert that the County's own records—a letter signed by Sam Nobles of the Grimes County Road and Bridge Department and a portion of a map that Mattox obtained from the County's "9-1-1 coordinator's office"— establish that Hill Forest Manor is 1298.025 feet long. Nobles, in his March 18, 2009 letter to Mattox, did write, "Hill Forest Lane is a county maintained road located in . . . the Hill Forest Manor Subdivision. Hill Forest Lane is 1298.025 feet long." And attached to his letter is a list of county and private roads, and on the list it is noted that Hill Forest Lane is a "dirt" road of 1298.025 feet. The section

22

of the map that Mattox obtained from the County's "9-1-1 coordinator's office" shows that Hill Forest Lane, east of Mata Road, is 871.202 feet long, and, west of Mata Road, 426.812 feet long, with an overall length of 1298.025 feet.

"The county road department is responsible for the construction and maintenance of county roads." TEX. TRANSP. CODE ANN. § 252.302(a) (Vernon 2013). That the County has actually constructed or is actually maintaining only 1298.025 feet of dirt road as Hill Forest Lane does not constitute evidence that the total roadway dedicated in the original plat in 1966 was only 1298.025. Rather, the plat appears to show that the length of Hill Forest Lane, west of Mata Road, is approximately 1000 feet.

Generally, the rule is that the opening up of a dedicated street for the greater part of its length by a municipality constitutes an acceptance of the *whole of the street as dedicated*, in the absence of anything to show a contrary intent, and the fact that a portion of the street is not capable of being traveled does not militate against acceptance. *Town of Palm Valley v. Johnson*, 17 S.W.3d 281, 287 (Tex. App.—Corpus Christi 2000, pet. denied) (holding entire length of street as originally platted accepted as public street, even though four-foot section of street not paved). And a "county's decision to delay maintenance until the roads are constructed does not constitute non-acceptance." *See e.g., Kunefke v. Calhoun Cnty*., No. 13-05-006-CV, 2006 WL 1553261, at \*4 (Tex. App.—Corpus Christi

23

June 8, 2006, no pet.) (mem. op.). Mattox and Wilkerson did present evidence that the County has not yet maintained the westernmost 134 feet of Hill Forest Lane; however, the County did not seek to establish that Hill Forest Lane is a public road based on maintenance. *See* TEX. TRANSP. CODE ANN. § 258.002(a) (allowing establishment of public road (1) under Chapter 281 *or other law, or* (2) as a result of having continuously maintained the road with public funds before September 1, 1981).

Taking as true all evidence favorable to Mattox and Wilkerson, and indulging every reasonable inference in their favor, as we must, we conclude that the County conclusively established its nuisance claim. Accordingly, we hold that the trial court did not err in granting the County summary judgment.

We overrule Mattox and Wilkerson's first issue.

**Affirmative Defenses**

In their second issue, Mattox and Wilkerson argue that the trial court erred in denying them summary judgment on their affirmative defense that they are "bona fide purchasers for value" because they "took their property without knowledge of the existence of a road across the southern boundary of their land."

A bona fide purchaser is one who acquires property in good faith, for value, and without notice, actual or constructive, of any third-party claim or interest. *See Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). Actual notice results from

personal information or knowledge; constructive notice is notice the law imputes to a person not having personal information or knowledge. *Id.*; *Hahn v. Love*, 394 S.W.3d 14, 31 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

An instrument that is properly recorded constitutes notice to all persons of the existence of the instrument. TEX. PROP. CODE ANN. § 13.002(1) (Vernon 2014). It is well settled that a purchaser is "bound by every recital, reference, and reservation contained in or fairly disclosed by an instrument which forms an essential link in the chain of title under which he claims." *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982). The rationale behind the rule is that

> *any* description, recital of fact, or reference to other documents [in an instrument] puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of *all the matters referred* to and affecting the estate is obtained.

*Id.* (quoting *Loomis v. Cobb*, 159 S.W. 305, 307 (Tex. Civ. App.—El Paso 1913, writ ref'd)),

Here, Mattox and Wilkerson admitted that before they purchased the lots, they inspected the plat of the subdivision on file in the county clerk's office. Because the plat shows Hill Forest Lane extending to the western border of the subdivision and lot 36, Mattox and Wilkerson had actual knowledge of the existence of the road.

Mattox and Wilkerson assert that the plat cannot serve as notice because only "an instrument that is properly recorded" can serve as notice and the plat was "not authorized to be recorded." They further assert that the pertinent law in 1966 required that a subdivision plat include the dimensions of all streets. *See* TEX. REV. CIV. STAT. ANN. art. 6626a (Vernon 1969). As discussed above, however, the plat does state the dimensions of Hill Forest Lane. It states, expressly, that Hill Forest Lane has a width of 60 feet, and the length of Hill Forest Lane can readily be determined by simple math, by reference to the measurements of the fronts of the abutting lots.

We conclude that Mattox and Wilkerson did not conclusively establish their affirmative defenses. *See Cathey*, 900 S.W.2d at 341. Accordingly, we hold that the trial court did not err in denying them summary judgment.

We overrule Mattox and Wilkerson's second issue.

26

**Conclusion**

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Brown.